OPINION
Defendant-appellant Edward Jacobs appeals from a judgment rendered against him in the Darke County Court of Common Pleas. Jacobs contends that the trial court made numerous errors in its determination of the amount he was required to repay plaintiff-appellee Wayne Hospital Company, Inc., pursuant to the terms of a Recruitment Agreement he entered into with the Hospital. From our review of the record, we conclude that with respect to each contention, the record either fails to support that contention, or the contention is supported only by Jacobs' own testimony, which the trial court found wanting in credibility. Accordingly, the judgment of the trial court is affirmed.
 I
In November, 1997, Wayne Hospital Company, Inc., and Edward C. Jacobs, M.D., entered into a Recruitment Agreement wherein the hospital guaranteed a minimum income to Jacobs in exchange for his promise to provide medical services in Darke County. Under the terms of the Agreement, Jacobs was to provide medical services for a term of one year, in exchange for which the Hospital would compensate him in the sum of $80,000 ("the Annual Guarantee"). The $80,000 was to be paid on a monthly basis after deducting expenses. Jacobs was entitled to keep all monies earned in excess of the $80,000 Annual Guarantee, provided that any previous payments made by the hospital were repaid. Jacobs became associated with an existing urology practice run by another physician under the operating name of Miami Valley Urology. This practice had offices located in Greenville and Kettering, Ohio.
The Agreement required Jacobs to submit to the Hospital, each month, a list of his income and expenses. From that, the Hospital determined Jacob's Net Professional Profit, which was defined as the total of all professional fees collected, minus the total of all necessary and reasonable office overhead and expenses allocable to the Darke County office. The Agreement then required the Hospital to determine whether the Net Professional Profit for the month in question was more or less than one-twelfth of the amount of the Annual Guarantee ($6,666.66). If the Net Professional Profit was greater than zero, but less than $6,666.66, the Hospital was obligated to pay Jacobs the difference between the Net Professional Profit and one-twelfth of the Annual Guarantee. However, if the Net Professional Profit for any given month was a negative amount, the Hospital was required to pay the $6,666.66 as well as the amount of the loss.
The Agreement provided that at the end of the Income Guaranty year, the Hospital would calculate the Net Advanced Amount, defined as the balance of monies advanced to Jacobs. The parties stipulated that during the term of the Agreement, Jacobs never generated a positive Net Professional Profit, and that the Net Advanced Amount was $123,322.29. The Agreement also provided for an end-of-year audit of Jacob's financial records to determine the amount of money that would have been advanced if the Net Professional Profit had been determined on an accrual basis, rather than on a cash basis.
After the audit, the Hospital determined that it had overpaid Jacobs. The Hospital filed a complaint against Jacobs seeking repayment of $26,281.62. Jacobs filed a counterclaim, in which he alleged that the Hospital had not fully compensated him under the terms of the Agreement. Thereafter, the Hospital amended its complaint to increase the amount requested in repayment to $75,007.62.
The case was tried before the judge of the Darke County Common Pleas Court, without a jury. During trial, it was determined that Jacobs had a net operating loss of $8,856.04 for the year, that the Hospital had advanced him the total sum of $123,322.29 during the term of the Agreement, and that the Agreement guaranteed Jacobs the sum of $80,000.
The trial court found that although the Hospital, in the end-of-year audit, had calculated Jacob's accounts receivable as $48,721, the evidence indicated that he would only be able to collect about thirty-five percent of that amount, and that the calculation for accounts receivable should therefore be adjusted to $17,052. The trial court further found that of the $36,246.59 submitted by Jacobs as expenses for his Greenville office, only $11,318 were reasonable, necessary and attributable to that office. Based upon the evidence presented, the trial court granted judgment in favor of the Hospital in the sum of $40,199.37, based upon the following calculations:
 Operating Income $(8,856.04) Accounts Receivable 17,053.00 Expenses -11,318.88
5,733.12
 Adjusted Net Operating Income (3,122.92) Amount Advanced 123,322.29 Net Operating Income (3,122.92)
 Total Net Advanced 120,199.37 Less Annual Guarantee 80,000.00
Amount to be repaid by Jacobs $40,199.37
From this judgment, Jacobs appeals.
 II
Jacobs' First Assignment of Error is as follows:
 "THE TRIAL COURT ERRED BY FINDING FOR PLAINTIFF ON ITS CLAIM FOR BREACH OF CONTRACT."
Jacobs contends that the trial court erred in finding for the Hospital. Specifically, he claims that the hospital did not conduct the year-end audit in accordance with the terms of the Agreement. He argues that he has no duty to repay the Hospital unless and until a proper audit is conducted. He also claims that the Hospital relied on "faulty" numbers in determining monies due under the Agreement.
A judgment of a trial court will not be reversed on appeal if it is supported by some competent, credible evidence going to all of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. The appellate court is directed by the presumption that the findings of the trier of fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. The trier of fact is in the best position to observe witnesses and weigh their credibility. Id. at 80.
We begin with the claim that the Hospital failed to follow the formula dictated by the Agreement. Jacobs contends that the Agreement required the Hospital to conduct the end-of-year audit on a month-to-month basis instead of, as done by the Hospital, at the conclusion of the guaranty period.
From our review of the Agreement, we find nothing to indicate that the end-of-year audit must be performed on a month-to-month basis. Jacobs does not support this argument with anything more than his bald assertion of error. Moreover, we find that there is testimony in the record to support a finding that the calculation does not need to be performed on a month-to-month basis, as urged by Jacobs, but instead may be determined one time, at the end of the guaranty period. The Agreement merely specifies that the final audit must be performed on an accrual basis, which it was.
Next Jacobs contends that the Hospital presented, and the trial court accepted, "faulty" numbers in determining the amount to be repaid. Specifically, he claims that the trial court failed to recognize that the Hospital used the total amount of his accounts receivable when the evidence indicated that he could only collect thirty-five per cent of that amount. He also claims that the trial court did not take into account his accrued debt. He also contends that the numbers used by the Hospital were provided by the accountant for Miami Valley Urology rather than by his personal accountant in California, and thus were not accurate. Finally, he contends that the trial court erred by failing to recognize that the Hospital had improperly allocated his expenses between his Greenville and Kettering offices.
We begin with the claim that the Hospital, and thus the trial court, utilized an inappropriate number in considering his accounts receivable. The audit determined that Jacobs' books showed accounts receivable for the year to be $48,721. Jacobs argues that by using this figure, the trial court ignored the fact that he testified that he typically could only collect thirty-five per cent of his accounts receivable.
We find this argument lacking in merit. First, other than his self-serving testimony, there is no evidence to support his claim that he could collect only thirty-five per cent. More importantly, the trial court did reduce the total stated amount of the accounts receivable to the amount suggested by Jacobs.
Next we address the claim that the Hospital failed to take into account the amount of the expenses accrued during the guaranty period and that the Hospital did not give him an opportunity to present all of his expenses. We note that for the one-year period of the Agreement, Jacobs submitted a claim for $36,246.59 in expenses. He later submitted additional expense claims for $20,000 for medical equipment and over $80,000 in debt he claimed to owe Miami Valley Urology.
With regard to this claim, the trial court found that many of the expenses claimed by Jacobs were not attributable to his Greenville practice. For example, Jacobs attempted to claim dues paid in his wife's name to AAA, and monies expended as gifts to physicians and patients, and for accounting services provided prior to the Agreement term. The trial court stated, "[p]resenting these dubious expenses has caused the Court to doubt most of the expenses proffered for payment and to question whether they were presented for purposes of obtaining a better negotiating position."
While Jacobs contends that the Hospital failed to take into account that he accrued $20,000 for the purchase of medical equipment, it is clear from the record that the Hospital did not err by doing so. The Agreement provides that the credit for expenses paid, or accrued, relates solely to "necessary and reasonable office overhead expenses." (Emphasis added.) The testimony provided by Jacobs demonstrates that the equipment he purchased was bought for use in the Hospital rather than in his office. While this might arguably provide Jacobs with a separate claim against the Hospital for reimbursement, it is clear that he is not entitled to claim this expense under the terms of the Agreement. Furthermore, Jacob cites, and we can find, no support in the record with regard to the claim that Jacobs owed Miami Valley Urology more than $80,000, or that the debt to Miami Valley Urology, if one existed, was an allocable expense under the terms of the Agreement.
Of the claimed expenses, the trial court found Jacobs entitled to reimbursement of $11,313.88. From our review of the record, we find no error in the trial court's determination.
Jacobs also contends that the numbers provided were faulty because they were provided by the accountant for Miami Valley Urology rather than by his personal accountant, and that the numbers were not accurate. However, he fails to explain which, if any, of the numbers used by the practice's accountant were incorrect. Furthermore, during trial, Jacobs testified that he accepted the numbers used by the accountant. Therefore, we find no merit in this argument.
Finally, Jacobs contends that the Hospital and the trial court erred with regard to his claimed expenses because they failed to recognize that prior to submitting his expenses, he had already allocated the costs appropriately between his two offices, and that the expenses submitted were solely related to his Greenville office. He contends that the Hospital's allocation of some of the expenses to his other office was therefore unwarranted.
We find no support in the record for this claim, other than Jacobs' own testimony. Given that the trial court was in the best position to determine Jacobs' credibility, and that the trial court found him to be less than truthful with regard to some of the expenses, we cannot say that the trial court erred with regard to its finding on the issue of expense allocation.
The First Assignment of Error is overruled.
 III
Jacobs' Second Assignment of Error is as follows:
 "THE TRIAL COURT ERRED IN ITS CALCULATION OF THE OPERATING INCOME OF APPELLANT."
Jacobs contends that the trial court erred by determining that his operating income for the Greenville office was $-8,856.04. He contends that this figure was prepared by the accountant for Miami Valley Urology and that there was no testimony that it was an accurate figure.
We note that, as the Hospital points out, Jacobs testified that he accepted the numbers utilized by the Miami Valley Urology accountant, and that he in fact relies upon the correctness of the $-8,856.04 number in his Fifth Assignment of Error. Furthermore, one of the exhibits submitted by Jacobs is a letter he signed indicating that this figure is correct.
The Second Assignment of Error is overruled.
 IV
Jacobs presents the following for his Third and Fourth Assignments of Error:
 "THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF APPELLANT'S INDIVIDUAL EXPENSES."
 "THE TRIAL COURT ERRED BY FAILING TO CALCULATE THE AMOUNT DUE PURSUANT TO THE TERMS OF THE CONTRACT."
In these Assignments of Error, Jacobs contends that the trial court erred in adopting the Hospital's determination that he should receive credit for only $11,318.88 of his claimed expenses, and that because it erred in failing to perform a month-to-month accrual analysis, it erred in calculating the amount due to the Hospital under the terms of the Agreement.
We have addressed, and rejected, these claims in Part II above. Therefore, the Third and Fourth Assignments of Error are overruled.
 V
The Fifth Assignment of Error provides:
 "THE TRIAL COURT ERRED BY FAILING TO AWARD APPELLANT THE SUM OF $51,769.29."
Jacobs claims that he is entitled to damages in the sum of $51,769.29. In support, he contends that he is entitled to his originally submitted expenses of $36,246.59, his net operating loss of $8,856.04, and the final payment of one-twelfth of the Annual Guaranty due under the Agreement in the sum of $6,666.66.
As stated above, we agreed with the trial court's finding that Jacobs was not entitled to credit for the total amount of expenses submitted to the Hospital. Furthermore, it is clear from the record that the net operating loss and the amounts due under the Agreement were taken into account in determining the final amount due under the contract. Since we find that the trial court was correct in finding that Jacobs owed money to the Hospital under the terms of the Agreement, it follows that the Hospital does not owe him. The Fifth Assignment of Error is overruled.
 VI
All of Jacobs' assignments of error having been overruled, the judgment of the trial court is affirmed.
BROGAN and GRADY, JJ., concur.